Scott S. Christie
Thomas J. Goodwin
Irene M. Hurtado
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

*Attorneys for Plaintiff*
*Hayward Industries, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| HAYWARD INDUSTRIES, INC. | : | |
| | : | |
| Plaintiff, | : | Civil Action No. _____ |
| | : | |
| v. | : | |
| | : | **COMPLAINT AND LOCAL RULE** |
| OPTIMUM POOL TECHNOLOGIES, INC. | : | **11.2 CERTIFICATION** |
| and POOL GUY SUPPLY, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff Hayward Industries, Inc. ("Hayward"), with a principal place of business

at 620 Division Street, Elizabeth, New Jersey  07207, by and through its attorneys,

McCarter & English, LLP, by way of Verified Complaint against Defendants Optimum

Pool Technologies, Inc. ("Optimum"), with a principal place of business at 312 North

Cota Street, Suite B, Corona, California  92880, and Pool Guy Supply, Inc. ("Pool Guy"),

with a principal place of business at 312 North Cota Street, Suite B, Corona, California

92880, (collectively, "Defendants") alleges as follows:

**<u>NATURE AND BASIS OF THE ACTION</u>**

1.      This is an action by Hayward seeking preliminary and permanent

1

injunctive relief and damages and other monetary relief against Defendants for trade dress and trademark infringement, unfair competition, and false designation of origin arising out of Defendants': (a) infringement of Hayward's trade dress for its AQUARITE® control panel; and (b) infringement of Hayward's T-CELL and TURBO CELL trademarks.

2.      This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1. *et seq.*; additional provisions of Title 56 of the New Jersey Statutes, and New Jersey common law.

## PARTIES

3.      Hayward is a corporation organized and existing under the laws of New Jersey with its principal place of business in Elizabeth, New Jersey.

4.      Upon information and belief, Optimum is a corporation organized and existing under the laws of California with its principal place of business in Corona, California.

5.      Upon information and belief, Pool Guy is a corporation organized and existing under the laws of California with its principal place of business in Corona, California.

6.      Upon information and belief, Defendants are affiliated corporate entities.

7.      Upon information and belief, Pool Guy is the alter ego of Optimum, or in the alternative, Optimum is the alter ego of Pool Guy.

8.      Upon information and belief, Optimum dominates Pool Guy to such an extent that there is a total unity of interest, and a lack of corporate independence, or in the alternative, Pool Guy dominates Optimum to such an extent that there is a total unity of

2

interest, and lack of corporate independence.

9.      Upon information and belief, there is an overlap in ownership between Optimum and Pool Guy, as well as an overlap in officers, directors and personnel.

10.     Upon information and belief, during the duration of the transactions giving rise to this cause of action,  Pool Guy had no separate mind, will or existence of its own, as all business decisions are and were made by Optimum for Optimum's own benefit, or in the alternative, Optimum had no separate mind, will or existence of its own, as all business decisions are and were made by Pool Guy for Pool Guy's own benefit.

## JURISDICTION AND VENUE

11.     Because this action arises out of violations of the Lanham Act, subject matter jurisdiction is conferred upon this Court by 15 U.S.C. § 1121 and 28 U.S.C. § 1331.

12.     The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Therefore, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

13.     Supplemental jurisdiction over the related state law claims is conferred upon this Court by 28 U.S.C. § 1367(a).

14.     This Court has personal jurisdiction over Defendants because, upon information and belief, (a) Defendants have had continuous, systematic and substantial business contacts with residents of this District; and (b) Defendants have deliberately created confusion among Hayward's existing and potential customers, many of whom reside in New Jersey.

15.     A substantial part of the events or omissions giving rise to the claims

occurred in this district and Defendants are subject to personal jurisdiction in this district.
Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b) & (c).

## ALLEGATIONS COMMON TO ALL COUNTS

**Hayward's Products**

16.     Hayward manufactures and sells a full line of state-of-the-art swimming
pool controls, chlorine generators, filters, heaters, pumps, valves, and automatic pool
cleaners, as well as other related products, worldwide under a variety of trademarks.

17.     Hayward offers a line of electrolytic salt chlorine generators for use with
swimming pools and spas for water purification under the trademark AQUA RITE or
AQUARITE, including the AQUARITE salt chlorine generator.  The AQUARITE line of
salt chlorine generators (the "AQUARITE Product(s)") consist of a distinctive control
unit (the "AQUARITE Control Unit(s)"), which is connected to a converter or chlorinator
cell that is offered under Hayward's TURBO CELL, TURBOCELL, and T-CELL
trademarks (the "T-CELL Product(s)").

18.     As water is forced through the T-CELL Product, added salt is converted
into chlorine. The AQUARITE Control Unit monitors the salt and chlorine levels with
various diagnostic indicators and allows the user to adjust the amount of chlorine
generated by the AQUARITE Product.

**The AQUARITE® Trade Dress**

19.     Since at least as early as 2005 and continuing to the present, Hayward and
its predecessor have sold and promoted for sale in U.S. commerce the AQUARITE
Control Unit, as part of the AQUARITE Products, in a configuration reflecting a
combination of distinctive design elements, including: a square-shaped control box, with

4

the front panel of the box (the "Panel") bearing a background image of blue water in motion with water droplets, depicted from an eye-level vantage point, which covers the predominant portion of the Panel, with a smaller swath of the color white across the top of the Panel, with the HAYWARD trademark, in the same shade of blue as the water, displayed in the upper left corner of the Panel on the swath of white.  The image on the Panel is surrounded by a black border around the water image.  The Panel features a rectangular digital display screen centered in the middle of the Panel, with a diagnostic button located near the bottom left corner of the digital display screen, a power switch located below the diagnostic button and next to an adjustment knob, which is underneath the digital display screen, and eight diagnostic LED indicators located to one side of the digital display screen in a row.  The elements described in the preceding sentences of this paragraph are referred to collectively herein as the "AQUARITE Trade Dress."  True and correct color photos of AQUARITE Control Units bearing the AQUARITE  Trade Dress are included as part of Exhibit A hereto.

20.     Hayward and its predecessor have expended substantial time and resources over the years to research, acquire, develop, maintain, promote, and sell its products, including the product lines sold bearing the AQUARITE Trade Dress.

21.     Hayward markets, distributes for sale, and sells its products bearing the AQUARITE  Trade Dress across the United States and throughout the world.

22.     The AQUARITE Products generate significant revenues for Hayward. The products sold bearing the AQUARITE Trade Dress have enjoyed substantial sales success, and Hayward and its predecessor have sold more than 500,000 AQUARITE Products bearing the AQUARITE Trade Dress in the United States since 2005.

ME1 15788180v.2

23.     During this same period, Hayward has extensively advertised and marketed products bearing the AQUARITE Trade Dress primarily through catalogs, at trade shows, on Hayward's website, and directly though a sales force.

24.     As a result of the long and continuous sale and promotion throughout the United States of products featuring the distinctive AQUARITE Trade Dress, consumers of pool and spa products have come to associate the AQUARITE  Trade Dress as signifying high-quality products originating from Hayward.

**The Hayward Trademarks**

25.     Since 2000, Hayward and its predecessor have used the trademark  T-CELL to designate its T-CELL Products for the AQUARITE Products (the "T-CELL Mark").  True and correct color photos of the T-CELL Products bearing the T-CELL Mark are included as part of Exhibit A hereto

26.     Hayward owns U.S. Registration No. 3,156,434 for the trademark TURBO CELL  in connection with "electrolytic chlorine generators for use with swimming pools and spas," in Class 11, which is now incontestable (the "TURBO CELL Mark").  A true and correct copy of the certificate of registration for the TURBO CELL Mark is annexed as Exhibit B.  The T-CELL Mark and the TURBO CELL Mark are referred to collectively as the "Hayward Marks."

27.     For years, Hayward and its predecessor have marketed and sold the T-CELL Products bearing the Hayward Marks throughout the U.S. and the world.

28.     Hayward has continuously used the Hayward Marks on the T-CELL Products without interruption in commerce throughout the U.S. since at least as early as 2000.

ME1 15788180v.2

29.     The T-CELL Products sold in connection with the Hayward Marks have enjoyed substantial sales success, and Hayward has sold more than 700,000 T-CELL Products bearing the Hayward Marks in the United States since 2005, both in conjunction with the AQUARITE Products and separately as replacement parts.

30.     During this same period, Hayward has extensively advertised and marketed products bearing the Hayward Marks primarily through catalogs, at trade shows, on Hayward's website, and directly though a sales force.  Hayward has spent  at least $200,000 marketing and advertising products bearing the AQUARITE Trade Dress and the Hayward Marks over the last three years alone.

31.     As a result of the long and continuous sale and promotion throughout the United States of products offered in connection with the distinctive Hayward Marks, consumers of pool and spa products have come to associate the Hayward Marks as signifying high-quality products originating from Hayward.

**Defendants' Acts of Infringement**

32.     Upon information and belief, Defendants manufacture, offer for sale, sell and/or distribute swimming pool and spa products, including chlorine generators and converters for use with chlorine generators.

33.     Hayward recently discovered that Defendants are advertising and selling a chlorine generator (the "Infringing Generator(s)") featuring a control box that infringes the AQUARITE Trade Dress (the "Infringing Control Unit(s)").

34.     The configuration and appearance of the Infringing Control Unit is confusingly similar to the AQUARITE Trade Dress.  The trade dress used on the Infringing Control Unit incorporates the identical design elements of the AQUARITE

7

Trade Dress, including a square-shaped control box, with the front panel of the control box (the "Infringing Panel") bearing a background image of blue water in motion with water droplets, depicted from an eye-level vantage point, which covers the predominant portion of the Infringing Panel, with a smaller swath of white across the top of the Infringing Panel, with the OPTIMUM trademark, in blue, displayed in the upper left corner of the Infringing Panel on the swath of white. The image on the Infringing Panel is surrounded by a black border around the water image. The Infringing Panel features a rectangular digital display screen centered in the middle of the Infringing Panel, with a diagnostic button located near the bottom left corner of the digital display screen, a power switch located below the diagnostic button and next to an adjustment knob, which is underneath the digital display screen, and eight diagnostic LED indicators located on one side of the digital display screen in a row. The elements described in the preceding sentences of this paragraph are referred to collectively herein as the "Infringing Trade Dress." A true and correct color copy of the Infringing Control Unit bearing the Infringing Trade Dress is annexed hereto as Exhibit C.

35.     Hayward also recently discovered that Pool Guy owns U.S. Registration No. 4,224,711 for the trademark T-CELL-15 ULTRA, in connection with "swimming pool chlorinating units," in Class 11 (the "Infringing Mark"). The registration for the Infringing Mark issued on October 16, 2012. According to the registration, Pool Guy made first use of the Infringing Mark in commerce on July 1, 2011, long after Hayward's first use of its T-CELL Mark. A true and correct copy of the certificate of registration for the Infringing Mark is annexed as Exhibit D.

36.     Defendants are using the Infringing Mark in connection with chlorine

8

converters or cells that are intended for use in connection with and, in some instances, sold together with the Infringing Generator (the "Infringing Converters").   A true and correct copy of a photograph of the Infringing Converter bearing the Infringing Mark is annexed as Exhibit E, and a true and correct copy of a page from Pool Guy's website advertising a package containing both the Infringing Control Unit and the Infringing Converter is annexed as Exhibit F.

37.     Pool Guy advertises and sells both the Infringing Control Unit and the Infringing Converters (collectively, the "Infringing Products") on its website, www.poolguysupply.com, which also sells Hayward's AQUARITE Products and the T-CELL Products.  A true and correct copy of a printout from Pool Guy's website is annexed as Exhibit G.

38.     Pool Guy also infringes the TURBO CELL Mark by using the mark TURBO CELL to refer to its Infringing Converters.  See Exhibit F.

39.     The Infringing Products compete with Hayward's products, specifically the AQUARITE Products and the T-CELL Products, in the United States.   Upon information and belief, the Infringing Products and the AQUARITE Products and T-CELL Products are sold through the some of the same channels of trade and to the same types of consumers, as evidenced by the fact that both the Infringing Products and Hayward's products are sold through Pool Guy's website.  Both the Infringing Products and Hayward's products are sold on the Internet and through authorized distributors.

40.     Upon information and belief, Defendants' promotion and sale of its products bearing the Infringing Trade Dress and the Infringing Mark, and its infringing use of the TURBO CELL Mark are continuing in the United States.

**Irreparable Injury and Need for Injunctive Relief**

41.     Defendants' infringement of the AQUARITE Trade Dress and the Hayward Marks is likely to cause, and has caused, confusion, mistake or deception among the public as to the affiliation, connection or association of Defendants and/or the Infringing Products with Hayward.  Such conduct constitutes unfair competition with Hayward, which will cause damages, injury and irreparable harm to Hayward.

42.     Defendants' adoption of a trade dress which infringes the AQUARITE Trade Dress and their registration and use of a trademark that infringes the T-CELL Mark constitute deceptive acts and practices and injures Hayward's business reputation causing Hayward lasting and irreparable harm, absent intervention of this Court.

**COUNT ONE**
**Trade Dress Infringement**

43.     Hayward incorporates the allegations of paragraphs 1-42 as if set forth fully herein.

44.     Hayward has control over the nature and quality of the goods produced bearing the AQUARITE Trade Dress.

45.     The AQUARITE Trade Dress is non-functional and serves to identify Hayward and its leading brand of AQUARITE Products.  Neither the appearance nor the arrangement of the components of the AQUARITE Trade Dress are essential to the use of the salt chlorine generator.  Similarly, the cost or quality of the AQUARITE brand salt chlorine generator is not affected to any significant degree by the use of the AQUARITE Trade Dress or its components.  Instead, the AQUARITE Trade Dress is solely a stylistic means to indicate Hayward as the source of its salt chlorine generators.

ME1 15788180v.2

46.     The AQUARITE Trade Dress has acquired secondary meaning and distinctiveness in light of Hayward's substantial marketing efforts, customer identification of Hayward's AQUARITE salt chlorine generators with a particular, single source, the substantial sales, and the length of its use as an identifier of Hayward as the source of this particular high quality line of pool products.

47.     By virtue of its use of the non-functional AQUARITE Trade Dress, Hayward is the owner at common law of the AQUARITE Trade Dress in connection with chlorine generators.  Hayward has established valuable good will in the AQUARITE Trade Dress.

48.     The Infringing Trade Dress used in connection with the Infringing Control Unit so closely resembles the AQUARITE Trade Dress that it is likely to cause confusion, mistake or deception.  Such use is likely to cause and has caused persons to believe, contrary to fact, that the products offered by Defendants bearing the Infringing Trade Dress originate with, are sponsored by, or are associated with Hayward thereby infringing the AQUARITE Trade Dress and diminishing and impairing Hayward's good will in the AQUARITE Trade Dress.

49.     Defendants' acts of infringement are willful.

50.     Hayward has suffered and will continue to suffer immediate and irreparable harm as a result of Defendants' promotion and sale of the Infringing Products bearing the Infringing Trade Dress.

**COUNT TWO**
**Trademark Infringement**

51.     Hayward incorporates the allegations of paragraphs 1-50 as if set forth fully herein.

52.     Defendants' use of the Infringing Mark on its Infringing Converters and Pool Guy's use of the TURBO CELL Mark on its website in connection with the Infringing Converters has caused or is likely to cause confusion, mistake, or deception as to the source or origin, sponsorship, or approval of Defendants or their products, in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that Defendants are associated with or related to Hayward or are authorized by Hayward to sell Hayward's T-CELL Products.

53.     Defendants' acts injure Hayward's image and reputation with consumers in this District and elsewhere in the United States by creating confusion about, and potential consumer dissatisfaction with, Hayward.

54.     Defendants' deliberate conduct alleged herein constitutes trademark infringement of the Hayward Marks in violation of 15 U.S.C. § 1125; N.J. Stat. Ann. § 56:3-13.16, and the common law of  New Jersey.

55.     Defendants' acts greatly and irreparably damage Hayward and will continue to so damage Hayward unless restrained by this Court; wherefore, Hayward is without adequate remedy at law.

**COUNT THREE**
**Unfair Competition**

56.     Hayward incorporates the allegations of paragraphs 1-55 as if set forth fully herein.

57.     Defendants' acts constitute unfair competition with Hayward in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); N.J. Stat. Ann. § 56:4-1, and the common law of New Jersey.

12

58.     Defendants' acts greatly and irreparably damage Hayward and will continue to so damage Hayward unless restrained by this Court; wherefore, Hayward is without adequate remedy at law.

## COUNT FOUR
## False Designation of Origin

59.     Hayward incorporates the allegations of paragraphs 1-58 as if set forth fully herein.

60.     Defendants' advertising and promotion of the Infringing Products falsely designate the source of these products in a manner that is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of these products by consumers.

61.     Defendants' acts constitute false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2; and the common law of New Jersey.

62.     Defendants' acts greatly and irreparably damage Hayward and will continue to so damage Hayward unless restrained by this Court; wherefore, Hayward is without adequate remedy at law.

## COUNT FIVE
## Cancellation Of Registrations Pursuant To
## 15 U.S.C. §§ 1119 and 1052(d)

63.     Hayward incorporates the allegations of paragraphs 1-62 as if set forth fully herein.

64.     The Infringing Mark is confusingly similar to the T-CELL Mark, which was in use by Hayward long prior to Defendants' adoption, first use and registration of the Infringing Mark.  When the Infringing Mark is used in connection with the Infringing

Converters, it is likely to cause confusion, or to cause mistake, or to deceive consumers to mistakenly believe that the Infringing Converters are those of Hayward and/or that Pool Guy and the Infringing Converters are authorized or sponsored by Hayward.

65.   Hayward is being and will continue to be damaged by Pool Guy's continued registration of the Infringing Mark.

66.   In light of the foregoing, the Court should declare Pool Guy's U.S. Registration No. 4,224,711 for the Infringing Mark invalid and cancelled pursuant to 15 U.S.C. §§ 1119 and 1052(d).

WHEREFORE, Hayward prays:

1.   That Defendants, and all persons acting in concert or participating with Defendants, be preliminarily and permanently enjoined from:

(a)   Using in any manner the AQUARITE Trade Dress, the Infringing Trade Dress, or any other trade dress that is confusingly similar to the AQUARITE Trade Dress, including, but not limited to, selling, offering for sale, displaying, promoting or advertising products bearing the AQUARITE Trade Dress, the Infringing Trade Dress, or any other confusingly similar trade dress;

(b)   Using in any manner the Infringing Mark, the Hayward Marks, or any other trademark that is confusingly similar to the Hayward Marks, including, but not limited to, selling, offering for sale, displaying, promoting or advertising products bearing the Infringing Mark, the Hayward Marks, or any other confusingly similar trademarks;

(c)     Passing off, inducing, or enabling others to sell or pass off any products that do not emanate from Hayward or that are not distributed under the control and supervision of Hayward and approved by Hayward for sale bearing the AQUARITE Trade Dress, the Infringing Trade Dress, the Hayward Marks, the Infringing Mark, or any other confusingly similar trade dress or trademarks, as products distributed by or with the approval of Hayward;

(d)     Committing any act calculated to cause purchasers to falsely believe that Defendants' products are those sold under the control and supervision of Hayward, are sponsored, approved or connected with, guaranteed, warranted, or produced under the control and supervision of Hayward;

(e)     Shipping, importing, delivering, distributing, returning, or otherwise disposing of in any manner products or inventory bearing the AQUARITE Trade Dress, the Infringing Trade Dress, the Hayward Marks, the Infringing Mark, or any trade dress or trademarks that are confusingly similar to the AQUARITE Trade Dress and/or the Hayward Marks;

(f)     Further infringing the AQUARITE Trade Dress and the Hayward Marks and damaging Hayward's goodwill and business reputation;

(g)     Otherwise competing unfairly with Hayward in any manner; and

(h)     Continuing to perform in any manner whatsoever any act deemed contrary to law by this Court.

2.     That Defendants be ordered to provide an accounting of all revenue generated from their use of the Infringing Trade Dress, the Infringing Mark, and the

Hayward Marks, and to pay Hayward all profits realized by Defendants by reason of their unlawful acts as set forth in this Complaint. 15 U.S.C. § 1117(a).

3.    That Defendants be ordered to pay Hayward all damages suffered by Hayward by reason of Defendants' trade dress infringement, trademark infringement, unfair competition, and false designation of origin, as set forth in this Complaint. 15 U.S.C. § 1117(a).

4.    That the Court award Hayward three times the damages suffered by reason of the intentional, unlawful acts of Defendants as set forth in this Complaint. 15 U.S.C. § 1117(a); N.J. Stat. Ann. § 56:8-19.

5.    That Defendants be required to file with the Court and serve on the undersigned counsel for Hayward, within thirty (30) days after the entry of judgment, a written report under oath setting forth in detail the manner in which Defendants have complied with the injunction ordered by this Court. 15 U.S.C. § 1116.

6.    That this case be declared exceptional, and that Defendants be ordered to pay Hayward the costs of this action, filing fees, and its reasonable attorneys' fees. 15 U.S.C. § 1117(a); N.J. Stat. Ann. § 56:8-19.

7.    That this Court enter an order directing the United States Patent and Trademark Office to cancel U.S. Registration No. 4,224,711 for the Infringing Mark.

8.    That Hayward shall have other such relief as this Court may deem just and proper.

## JURY DEMAND

Hayward hereby demands a trial by jury on all issues and claims raised in the Complaint that are triable by jury.

16

Respectfully submitted,

August 7, 2013                    s/ Scott S. Christie
                                 Scott S. Christie
                                 Thomas J. Goodwin
                                 Irene M. Hurtado
                                 **McCARTER & ENGLISH, LLP**
                                 Four Gateway Center
                                 100 Mulberry Street
                                 Newark, NJ 07102

                                 *Attorneys for Plaintiff Hayward Industries, Inc.*

17

## <u>LOCAL CIV. R. 11.2 CERTIFICATION</u>

I certify that to the best of my present knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

August 7, 2013

s/ Scott S. Christie
Scott S. Christie
Thomas J. Goodwin
Irene M. Hurtado
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

*Attorneys for Plaintiff Hayward Industries, Inc.*

18